Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000118
21-FEB-2017
10:55 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

DEAN DANIEL MARA, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee.

NO. CAAP-16-0000118

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDING PRISONER NO. 15-1-0025)
(CRIMINAL NO. 97-1415)

February 21, 2017

NAKAMURA, C.J., and LEONARD and REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

In his underlying criminal case, Petitioner-Appellant Dean Daniel Mara (Mara) was convicted, after a jury trial, of manslaughter, reckless endangering, and place to keep loaded firearm. Respondent-Appellee State of Hawai'i (State) moved for extended terms of imprisonment on the grounds that Mara was a "persistent offender" and a "multiple offender" whose imprisonment for an extended term was necessary for protection of the public. The Circuit Court of the First Circuit (Circuit Court) granted the motion and sentenced Mara to concurrent extended terms of life imprisonment with the possibility of

parole, ten years of imprisonment, and twenty years of imprisonment. The Circuit Court entered its Judgment on March 11, 1999, and Mara filed a direct appeal from his Judgment. The Hawai'i Supreme Court affirmed the Judgment in an opinion issued on February 15, 2002, State v. Mara, 98 Hawai'i 1, 41 P.3d 157 (2002), and Mara's conviction and sentence became final in 2002.

On November 23, 2015, Mara filed a petition for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40 (2006) (Petition). Mara sought relief on the grounds that: (1) his extended terms of imprisonment were illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000); and (2) his appellate counsel was ineffective for failing to assert his Apprendi claim on direct appeal. On February 2, 2016, the Circuit Court denied Mara's Petition and filed its "Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody" (Order Denying Petition). In denying the Petition, the Circuit Court relied on this court's opinion in Loher v. State, 118 Hawai'i 522, 193 P.3d 438 (App. 2008) (Loher I).

Mara appeals from the Order Denying Petition. On appeal, Mara contends that the Circuit Court[1] erred in rejecting his Apprendi-based challenges to his extended term sentences. The State contends that our opinion in Loher I is no longer "good law," and it agrees with Mara that the Circuit Court should have granted Mara's Petition based on his Apprendi claim. We disagree with Mara's arguments and the State's contention that Loher I is no longer good law.

As explained in greater detail below, until its 2007 decision in State v. Maugaotega, 115 Hawai'i 432, 168 P.3d 562 (2007) (Maugaotega II), the Hawai'i Supreme Court steadfastly held that Hawai'i's extended term sentencing scheme comported with Apprendi. Maugaotega II, 115 Hawai'i at 437-42, 168 P.3d at 567-72. It was only the United States Supreme Court's decision

---

[1] The Honorable Dexter D. Del Rosario presided over Mara's underlying criminal case and the Petition at issue in this appeal.

2

in Cunningham v. California, 549 U.S. 270 (2007), that caused the Hawai'i Supreme Court to change its view. Maugaotega II, 115 Hawai'i at 442-47, 168 P.3d at 572-77. In Loher I, we relied on the Hawai'i Supreme Court's multiple precedents prior to Cunningham, which had rejected Apprendi-based challenges to Hawai'i's extended term sentencing scheme, in holding that Apprendi did not apply to Loher's collateral attack of his extended term sentence, which became final in 2003. Loher I, 118 Hawai'i at 536-38, 193 P.3d at 452-54.

Mara and the State rely on federal district court and federal Ninth Circuit Court of Appeals (Ninth Circuit) decisions granting habeas corpus relief and vacating extended term sentences imposed on Hawai'i defendants. Decisions of the federal district court in Hawai'i and the Ninth Circuit hold, contrary to the Hawai'i Supreme Court's precedents, that it was immediately clear once Apprendi was decided that Hawai'i's extended term sentencing scheme was unconstitutional. The Hawai'i Supreme Court was aware of the analysis of the Ninth Circuit and the district court but declined to follow it, noting that state courts are only bound by decisions of the United States Supreme Court. State v. White, 110 Hawai'i 79, 81-82 & n.4, 129 P.3d 1107, 1109-10 & n.4 (2006). This court is bound by the precedents of the Hawai'i Supreme Court. Based on Hawai'i Supreme Court precedent, we conclude that Loher I remains good law and that Mara's extended term sentences, which became final in 2002, are not subject to collateral attack.

BACKGROUND

The State indicted Mara in 1997 and charged him with second-degree murder of Stella Jensen (Count 1); attempted first-degree murder of Jensen and Gary Akopian (Count 2); attempted second-degree murder of Akopian (Count 3); possession of a firearm by a person convicted of certain crimes (Count 4); possession of ammunition by a person convicted of certain crimes (Count 5); and place to keep a loaded firearm (Count 6). Mara, 98 Hawai'i at 3, 41 P.3d at 159. The jury found Mara guilty of reckless manslaughter (Count 1), reckless endangering (Count 3),

and place to keep loaded firearm (Count 6). Id. at 10, 41 P.3d 166.[2]

The State moved for extended terms of imprisonment on the grounds that Mara was a "persistent offender" under Hawaii Revised Statutes (HRS) § 706-662(1) and a "multiple offender" under HRS § 706-662(4) whose imprisonment for an extended term was necessary for protection of the public.[3] The State asserted that Mara was a persistent offender due to his five prior felony convictions[4] and a "multiple offender" due to the jury's guilty verdicts on three felony counts. The Circuit Court granted the State's motion and sentenced Mara to concurrent extended terms of life imprisonment, with the possibility of parole, on Count 1, ten years of imprisonment on Count 3, and twenty-years of imprisonment on Count 6. Based on Mara's status as a repeat offender, the Circuit Court also imposed mandatory minimum terms of imprisonment of thirteen years and four months, three years and four months, and six years and eight months on Counts 1, 3,

---

[2] The jury acquitted Mara of Counts 2 and 4, and Count 5 was dismissed by the prosecution. Mara, 98 Hawai'i at 10 & n.9; 41 P.3d at 166 & n.9.

[3] At the time relevant to Mara's charges and his sentencing, HRS § 706-662(1) and (4) (Supp. 1996) provided, in relevant part:

> A convicted defendant may be subject to an extended term of imprisonment under section 706-661, if the convicted defendant satisfies one or more of the following criteria:
>
> (1)  The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.
>
> . . . . [or]
>
> (4)  The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:
>
> > (a)  The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony[.]

[4] Mara had been convicted of first-degree rape, first-degree sex abuse, kidnapping, and unauthorized control of a propelled vehicle (UCPV) in Cr. No. 86-0960 and UCPV in Cr. No. 93-2821.

4

and 6, respectively. The Circuit Court entered its Judgment of conviction and sentence (Judgment) on March 11, 1999.

Mara filed a direct appeal of his Judgment. On February 15, 2002, the Hawai'i Supreme Court issued an opinion affirming the Circuit Court's Judgment. Mara, 98 Hawai'i at 17, 41 P.3d at 173. The supreme court entered its judgment on appeal on March 7, 2002. There is no indication that Mara petitioned for a writ of certiorari to the United States Supreme Court. Therefore, Mara's conviction and sentence became final on or about June 5, 2002, ninety days after the judgment on appeal was entered.

On April 28, 2004, Mara filed a petition for post-conviction relief, which the Circuit Court summarily denied.

On November 23, 2015, Mara filed the Petition that is at issue in this appeal. In the Petition, Mara argued that: (1) his extended term sentences were illegal under Apprendi because they were based on facts found by the judge, and not by a jury; and (2) his appellate counsel provided ineffective assistance by failing to raise an Apprendi claim on appeal. The State opposed Mara's Petition. The Circuit Court denied the Petition, citing this court's opinion in Loher I in support of its decision. The Circuit Court noted that Mara's conviction and sentence became final in 2002, prior to the Hawai'i Supreme Court's ruling in Maugaotega II, and that Mara was not entitled to a retroactive application of Maugaotega II. The Circuit Court entered its Order Denying Petition on February 2, 2016, and this appeal followed.

## DISCUSSION

On appeal, Mara argues that the Circuit Court erred in denying his Petition because his extended term sentences were illegal based on Apprendi. Despite opposing Mara's Petition in the Circuit Court, the State on appeal contends that the Circuit Court erred in concluding that Mara could not collaterally attack his extended term sentences based on Apprendi. Citing federal district court and Ninth Circuit cases, the State argues that the decision in Apprendi, and not any subsequent decision, is the

"demarcation point" in determining whether a defendant may collaterally attack an extended term sentence imposed by a judge without findings by a jury. The State therefore asserts that this court's decision in Loher I "is not good law" and that Mara's extended term sentences, which became final after Apprendi was decided in 2000, must be vacated.

It is well settled that the State's concession of error is not binding on an appellate court, and that when the State concedes error, it is still "incumbent on the appellate court" to independently determine whether the concession "is supported by the record and well-founded in law[.]" State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) (internal quotation marks and citation omitted). In light of Hawai'i Supreme Court precedents, which are binding on this court, we conclude that the State's concession of error is not well-founded in law or supported by the record. As explained below, we conclude that Loher I is still good law with respect to collateral attacks based on Apprendi. We further conclude that in determining whether Hawai'i extended term sentences imposed by a judge without jury findings are subject to collateral attack, the line of demarcation is Cunningham, and not Apprendi.

I.

The issue presented in this case is not whether Apprendi applies retroactively. Retroactive application refers to applying decisions to cases that became final before the decision was rendered. Mara's conviction and sentence became final in 2002, after Apprendi was decided in 2000. Nor is the issue whether Hawai'i's extended term sentencing scheme violated Apprendi as interpreted and clarified by subsequent United States Supreme Court decisions. In Maugaotega II, the Hawai'i Supreme Court held that in light of the United States Supreme Court's interpretation and application of Apprendi in Cunningham, the Hawai'i Supreme Court's "long-held belief" that Hawai'i's extended term sentencing scheme complied with Apprendi could not stand. Maugaotega II, 115 Hawai'i at 445-46, 168 P.3d at 575-76.

6

Instead, the issue in this case is what precedent dictated the conclusion that Hawai'i's extended term sentencing scheme was unconstitutional. In other words, when did it become clear that the Apprendi decision meant that Hawai'i's extended term sentencing scheme was unconstitutional. Subject to exceptions not applicable here, a judicial decision which announces a new rule does not apply retroactively to convictions which have become final. Teague v. Lane, 489 U.S. 288 (1989). "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." Id. at 301.[5] The deciding question in this case is what precedent dictated and made it clear that Hawai'i's extended term sentencing scheme was unconstitutional. The Hawai'i Supreme Court's answer to this question is Cunningham.

In Maugaotega II, the Hawai'i Supreme Court held that Cunningham was the first United States Supreme Court precedent that dictated and made clear that Hawai'i's extended term sentencing scheme was unconstitutional. Maugaotega II, 115 Hawai'i at 445-46, 168 P.3d at 575-76. Before Maugaotega II, the Hawai'i Supreme Court, in a series of decisions, steadfastly held that Hawai'i's extended term sentencing scheme was constitutional under Apprendi and its progeny. See Loher I, 118 Hawai'i at 536, 183 P.3d at 452.

In State v. Kaua, 102 Hawai'i 1, 72 P.3d 473 (2003), the Hawai'i Supreme Court held that because of the limitations it had imposed on Hawai'i's extended term sentencing scheme through its intrinsic/extrinsic analysis, the Hawai'i scheme comported with Apprendi and "fell outside the Apprendi rule[.]" Kaua, 102 Hawai'i at 11-13, 72 P.3d at 483-85. In the years following Apprendi, the United States Supreme Court refined its Sixth Amendment analysis in a 2004 decision, Blakely v. Washington, 542 U.S. 296 (2004), and a 2005 decision, United States v. Booker,

---

[5] See Butler v. McKellar, 494 U.S. 407, 414 (1990) ("The 'new rule' principle . . . validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions.").

543 U.S. 220 (2005). Neither Blakely nor Booker altered the Hawai'i Supreme Court's conclusion that Hawai'i's extended term sentencing scheme complied with Apprendi and a criminal defendant's Sixth Amendment right to a jury trial. In State v. Rivera, 106 Hawai'i 146, 102 P.3d 1044 (2004), the Hawai'i Supreme Court reaffirmed its conclusion that the Hawai'i extended term sentencing scheme complied with Apprendi after considering the decision in Blakely, and in State v. Maugaotega, 107 Hawai'i 399, 114 P.3d 905 (2005) (Maugaotega I), it again reaffirmed this view after considering the decision in Booker.

II.

The federal district court in Hawai'i and the Ninth Circuit disagreed with the Hawai'i Supreme Court's Apprendi analysis. In Kaua v. Frank, 350 F.Supp.2d 848 (D. Haw. 2004) (Federal Kaua I), the federal district court granted Kaua's habeas corpus petition, holding that Kaua's extended term sentence clearly violated Apprendi and that the Hawai'i Supreme Court's failure to overturn Kaua's extended sentence based on Apprendi "was contrary to, and involved an unreasonable application of, clearly established federal law[.]" Federal Kaua I, 350 F.Supp.2d at 850, 860. The federal district court ordered the State to resentence Kaua in a manner consistent with the court's decision. Id. at 861. The Ninth Circuit agreed with the district court that the Hawai'i Supreme Court's affirmance of Kaua's extended sentence was contrary to the decision in Apprendi, and the Ninth Circuit affirmed the district court's grant of Kaua's petition for writ of habeas corpus. Kaua v. Frank, 436 F.3d 1057, 1062 (9th Cir. 2006) (Federal Kaua II).

In White, the Hawai'i Supreme Court acknowledged the federal district court and Ninth Circuit decisions in Federal Kaua I and Federal Kaua II. White, 110 Hawai'i at 81 n.4, 129 P.3d at 1109 n.4. It further noted, however, that only the holdings of the United States Supreme Court, and not of lower federal courts, were binding on state courts. Id. The Hawai'i Supreme Court "decline[d] to follow" the holdings of the federal courts in Federal Kaua I and Federal Kaua II, and it again in

White reaffirmed its holding that "Hawai'i's extended term sentencing scheme does not run afoul of Apprendi[.]" Id. at 81-82 & n.4, 129 P.3d at 1109-10 & n.4.

III.

On appeal, the State cites Federal Kaua II and federal district court cases granting habeas relief to Hawai'i defendants sentenced to extended terms of imprisonment in asserting that Apprendi constitutes the demarcation point in determining whether a Hawai'i extended term sentence imposed by a judge is subject to collateral attack. In doing so, the State adopts Federal Kaua II's holding that the Hawai'i Supreme Court's decision to affirm Kaua's extended term sentence was contrary to Apprendi. However, it is well settled that a state court is not bound by the lower federal courts' interpretation of the federal constitution or federal law, but is only bound by the United States Supreme Court's interpretation. See White, 110 Hawai'i at 81 n.4, 129 P.3d at 1109 n.4; Loher I, 118 Hawai'i at 536 n.16, 193 P.3d at 452 n.16.

More importantly, this court is bound by the decisions and holdings of the Hawai'i Supreme Court. Until Maugaotega II, the Hawai'i Supreme Court repeatedly upheld the constitutionally of Hawai'i's extended term sentencing scheme in the face of challenges based on Apprendi and its progeny, Blakely and Booker.[6] It was the United States Supreme Court's 2007 decision in Cunningham that caused the Hawai'i Supreme Court to change its view and hold that Hawai'i's extended term sentencing scheme was unconstitutional under Apprendi, despite the limitations the Hawai'i Supreme Court had imposed through its intrinsic/extrinsic

---

[6] Hawai'i was not alone in concluding that its statutory scheme providing for judicially enhanced sentences did not violate Apprendi. For example, New York's persistent felony offender sentencing statute, which was very similar to Hawai'i's "persistent offender" extended term sentencing provision, was upheld against Apprendi challenge by New York's highest court in People v. Rosen, 752 N.E.2d 844 (N.Y. 2003). Like Hawai'i's persistent offender provision, the New York persistent felony offender statute provided for an enhanced sentence based on a judge's determination that the defendant has been previously convicted of two or more felonies for which a sentence of over one year was imposed and that the judge, after considering enumerated factors, is of the opinion that the enhanced sentence is warranted. Rosen, 752 N.E.2d at 847.

analysis.  Therefore, under the Hawaiʻi Supreme Court's interpretation of federal constitutional law, it was <u>Cunningham</u> and not <u>Apprendi</u> that announced the new rule that dictated and made clear that Hawaiʻi's extended term sentencing scheme was unconstitutional.[7/]  Accordingly, based on the precedents of the Hawaiʻi Supreme Court, it is <u>Cunningham</u> that establishes the line of demarcation -- that is, extended term sentences that became final after <u>Apprendi</u> but before <u>Cunningham</u> are not subject to collateral attack.

IV.

In <u>Loher I</u>, we considered Loher's challenge to his extended term sentence which had become final in 2003, after <u>Apprendi</u> but before <u>Blakely</u>, <u>Booker</u>, and <u>Cunningham</u>.  After citing post-<u>Apprendi</u> decisions of the Hawaiʻi Supreme Court from <u>Kaua</u> to <u>Maugaotega II</u>, which included cases upholding Hawaiʻi's extended term sentencing scheme against <u>Apprendi</u>-based challenges after <u>Blakely</u> and <u>Booker</u>, we held that Loher could not collaterally attack his extended term sentence based on <u>Apprendi</u>.  <u>Loher I</u>, 118 Hawaiʻi at 534-38, 193 P.3d at 450-54.  In Loher's case, we did not need to reach the question of whether <u>Cunningham</u> established a new rule because Loher's sentence became final even before <u>Blakely</u> and <u>Booker</u>.  <u>Id.</u> at 537-38, 193 P.3d at 453-54.  Since <u>Loher I</u> was decided, we have upheld extended term sentences that became final after <u>Apprendi</u> but before <u>Blakely</u> and <u>Booker</u> in numerous cases, including several in which applications for writs of certiorari were denied by the Hawaiʻi Supreme Court.[8/]

---

[7/] As the decisions of the Hawaiʻi Supreme Court between <u>Apprendi</u> and <u>Cunningham</u> show, when Mara's convictions and sentences became final in 2002, the question of whether Mara's extended term sentences violated <u>Apprendi</u> "was susceptible to debate among reasonable minds," <u>Butler</u>, 494 U.S. at 415, and the validity of an <u>Apprendi</u>-based challenge to Mara's extended term sentences was not "apparent to all reasonable jurists."  <u>Beard v. Banks</u>, 542 U.S. 406, 413 (2004) (internal quotation marks and citation omitted).

[8/] E.g., <u>Napeahi v. State</u>, No. 28809, 2009 WL 338088 (Hawaiʻi App. Feb. 12, 2009), <u>cert. denied</u>, 2009 WL 2105641 (May 1, 2009); <u>Freitas v. State</u>, No. 29808, 2010 WL 2024730 (Hawaiʻi App. May 21, 2010), <u>cert. denied</u>, SCWC-10-0000003, 2010 WL 4308576 (Hawaiʻi Nov. 1, 2010); <u>Robins v. State</u>, No. 30402, 2011 WL 3848158 (Hawaiʻi App. Aug. 31, 2011), <u>cert. denied</u>, No. SCWC-30402, 2012 WL 474022 (Hawaiʻi Feb. 13, 2012); <u>Scrivner v. State</u>, No. 30507, 2011 WL 5997039 (Hawaiʻi App. Nov. 30, 2011), <u>cert. denied</u>, No. SCWC-30507, 2012 WL 1677430 (Hawaiʻi May 14, 2012).

V.

We acknowledge that based on <u>Federal Kaua I</u> and <u>Federal Kaua II</u>, it appears that a Hawai'i defendant would be able go to federal court and obtain habeas corpus relief to vacate an extended term sentence imposed by a judge that was not final before <u>Apprendi</u>. However, this was also true when the Hawai'i Supreme Court decided <u>White</u>. Despite the availability of federal habeas corpus relief, this court is still bound by the decisions of the Hawai'i Supreme Court. Based on Hawai'i Supreme Court precedents, we conclude that Mara is not entitled to collaterally attack his extended term sentences based on <u>Apprendi</u>.[9]

CONCLUSION

Based on the foregoing, we affirm the Circuit Court's Order Denying Petition.

On the briefs:

Dean Mara
Petitioner-Appellant pro se.

James M. Anderson
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Respondent-Appellee.

_Craig H. Nakamura_

_Lawrence M. Reifurth_

---

[9] Given the Hawai'i Supreme Court's repeated rejection of <u>Apprendi</u>-based challenges to the constitutionality of Hawai'i's extended term sentencing scheme prior to <u>Maugaotega II</u>, we also conclude that Mara's appellate counsel was not ineffective for failing to assert an <u>Apprendi</u> claim on direct appeal of Mara's Judgment.